UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTRACTORS BONDING AND INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AMTRUST INTERNATIONAL UNDERWRITERS LIMITED (AMTRUST),<br><br>　　　　Defendant. | Case No. 20-cv-03248-RS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Greg Wimmer, a California homeowner, hired J.P Whitney Construction ("Whitney") as a general contractor to remodel his home. Whitney subsequently brought on Mike Grasshof Construction ("Grasshof"), a framer, as a subcontractor. Months into the project, Wimmer and Whitney disagreed about progress and payment; Whitney pulled Grasshof off the job and soon after abandoned the project. Wimmer then sued Whitney and Grasshof in San Mateo Superior Court, though only some of the claims implicate Grasshof. *See Wimmer v. JP Whitney Constr.*, No. CIV 538350 ("Wimmer matter"). Now, Whitney and Grasshof's insurers bring cross motions for summary judgment to determine their defense obligations. For the reasons set forth below, Defendant's motion for summary judgment is granted and Plaintiff's is denied.

## II. BACKGROUND

### A. The Policies

Before starting work on Wimmer's house, both Whitney and Grasshof obtained

commercial insurance. Whitney purchased insurance from Contractors Bonding and Insurance Company ("CBIC") and Grasshof obtained insurance from AmTrust International Underwriters Limited ("AmTrust").[1] The terms of Whitney and Grasshof's subcontract require Grasshof to name Whitney as an additional insured on his insurance policy. The relevant AmTrust endorsement provides: "It is agreed that such insurance as is afforded by this policy for the benefit of the additional insured shown [Whitney] shall be primary insurance, and any other Insurance maintained by the additional insured(s) shall be excess and noncontributory as respects any claim, loss or liability allegedly arising out of the operations of the named insured, provided however that this insurance will not apply to any claim, loss or liability which is determined to be solely the result of the additional insured's negligence or solely the additional insured's responsibility." Complaint ¶ 17. The AmTrust policy further cautions that the additional insured is covered "only with respect to liability for 'bodily injury' or 'property damage' caused, in whole or in part, by 'your [Grasshof's] work' at the location designated and described in the schedule of this endorsement performed for that additional insured[.]" *Id.*

The policies include identical duty to defend provisions and provisions contemplating contribution by equal shares. The insurers must defend a suit alleging "bodily injury" or "property damage" as a result of an occurrence within the policy period. Under "Method of Sharing," both policies provide: "If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first." Complaint Ex. 4 ("CBIC Policy") at ECF 91; Complaint Ex. 5 ("AmTrust Policy") at ECF 166.

Both policies characterize their obligations as excess. AmTrust's excess provision is modified, in relevant part, by an endorsement stating "[i]f other valid and collectible insurance is

---

[1] AmTrust issued to Grasshof two policies covering different time periods, PAL1045025-00 for the period of March 9, 2014 to March 9, 2015 and PAL1045025-01 for the next yearly period. Because the policies appear to be substantially similar and neither party focuses on their differences, any reference to the "AmTrust policy" refers to both.

ORDER
CASE NO. 20-cv-03248-RS

2

available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:" "[t]his insurance is primary except when b. below applies. If this insurance is primary, for all claims except those arising out of work performed by the Named Insured, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below. For claims arising out of work performed by the Named Insured, the coverage afforded herein, shall be primary in relation to any policies carried by any person or organization to whom or to which the Named Insured is obligated by virtue of a written contract to secure primary insurance, and then only as required by said contract." Complaint Ex. 5 at ECF 213. Subsection (b), as referenced in the previous modification, relegates as excess the AmTrust policy in a number of situations not relevant here.

CBIC's excess provision is also modified by an endorsement reading, in relevant part, "[t]his insurance is excess over any other insurance whether primary, excess, contingent or on any other basis that is available to you as an additional insured or contractual indemnitee under a policy issued to a subcontractor. You are required to give notice of a claim to all 'potential insurers' within 30 days of giving notice of claim to us. We have no duty under **Coverage A or B** to defend any claim or 'suit' that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to our rights against all those other insurers." Complaint ¶ 14; CBIC Policy at ECF 122 (emphasis in original).

**B. The Wimmer Matter**

Wimmer originally hired Whitney to remodel his home in Woodside, California. They entered into a "limited scope" construction agreement on March 20, 2013, which provided that Whitney would provide foundation construction services and serve as a general contractor. Once the foundation was complete, Whitney hired Grasshof to perform some additional framing work. Grasshof leveled the floors, repaired the living room, and planned framing changes, among other things. Following Wimmer and Whitney's disagreements about the project, Grasshof was removed from the project on November 7, 2014, though his work was not yet complete.

Wimmer's suit in San Mateo Superior Court alleges defects related to the work of Whitney, Grasshof, and another subcontractor, Central Coast Welding. The complaint alleges framing-specific deficiencies (out of level framed windows and out of plumb framing members, for example) as well as foundation and general contracting issues, including the failure to perform construction services in a prompt, efficient, and workmanlike manner. Wimmer and Grasshof's experts in the underlying matter agree that Whitney performed part of the allegedly deficient framing work before hiring Grasshof.

Whitney tendered the Wimmer matter to AmTrust for defense and indemnification on June 3, 2016. Two years later, AmTrust agreed to participate in Whitney's defense. On November 7, 2018, CBIC requested reimbursement for defense fees incurred prior to AmTrust's acceptance of coverage. When it received no response, CBIC made a second demand on December 7, 2018. Almost a year later, AmTrust communicated to CBIC that it was only willing to provide a defense against issues related to its named insured, Grasshof. It claimed "[t]here are aspects of this claim that are not covered under our policy which include the negligence of [Whitney], and actions in the complaint that do not include [Grasshof]. Amtrust has always agreed to pay 50% of its share of defense. We never agreed to pay 100%." Complaint Ex. 11. CBIC now seeks equitable contribution, equitable subrogation, and declaratory relief.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett,* 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal citations and quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient

showing on an essential element of the case with respect to which it bears the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586 (1986). The trial court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520 (1991).

### IV. DISCUSSION[2]

AmTrust argues first that its carefully worded additional insured endorsement precludes defense of Whitney where any liability is solely the result of Whitney's own negligence. Whitney is only entitled to a defense where the harm was "caused, in whole or in part" by Grasshof. Complaint ¶ 17. In support of this proposition, AmTrust relies on two cases: *Maryland Cas. Co. v. Nationwide Mut. Ins. Co.*, 81 Cal.App.4th 1082 (2000) and *First Mercury Ins. Co. v. Great Divide Ins. Co.*, 241 F.Supp.3d 1028 (N.D. Cal. 2017).

The basic structure of *Maryland Casualty* mirrors the facts at issue here: a contractor hires subcontractors and requires them to name the general contractor as an additional insured. 81 Cal.App.4th at 1086. The subcontractors purchase the required insurance, but it applies only when the general contractor is held liable for the subcontractors' acts "arising out of and in the course of" work performed for the general contractor. *Id.* at 1087. The policy emphasizes, in capital

---

[2] AmTrust requests judicial notice of seven items: (1) the Complaint in this action, (2) the complaint in the Wimmer matter, (3) AmTrust's reservation of rights letter dated June 18, 2018, (4) CBIC and AmTrust's "Other Insurance" provisions as contained within the Complaint, (5) AmTrust's email to CBIC indicating it only agreed to pay 50% of Whitney's defense, (6) an amendment naming Central Coast Welding & Fabrication, Inc. as Roe 1 in the cross-complaint in the Wimmer matter, and (7) the contract between Whitney and Grasshof. While AmTrust provides no legal support for its request, CBIC does not oppose it and the items are hereby noticed.

letters, that coverage under the additional insured endorsement is primary only with respect to acts or omissions of the subcontractor (named insured) and that any other insurance is excess. *Id.* The general contractor has its own, additional primary policy. *Id.*

The court read the relevant provisions in a "consistent and reasonable manner" to find the additional insured provision created limited vicarious liability coverage for the additional insured. *Id.* at 1090. It declined to find the general contractor's policy (in which it was the named insured) to be only excess because such an interpretation "would alter the purpose and nature of the additional insured endorsement by creating coverage for all of [the general contractor's] direct acts and for the other subcontractors' acts." *Id.* The subcontractor's coverage did not "supersede[] other primary coverage for [the general contractor's] own – as opposed to vicarious – liability as to the entire project." *Id.* at 1090-91. Moreover, the court reasoned, the commercial context in which the policies arose did not support the general contractor's reading. The general contractor purchased its own primary coverage and then bargained for each subcontractor to name it as an additional insured for liability arising from the subcontractor's acts. *Id.* at 1091. It would not be within the reasonable expectations of the parties to saddle one subcontractor's insurer with most of the cost of the defense "pertaining to acts having nothing to do with its insureds." *Id.* Ultimately, the court concluded that the general contractor's insurers were not entitled to shift the entire defense obligation on to a subcontractor's insurer even though the subcontractor's policy was a primary where the general contractor's vicarious liability was implicated. *Id.* at 1093.[3]

The same result must follow here. As in *Maryland Casualty*, Whitney leveraged its position as a general contractor to require Grasshof to name it as an additional insured. The provision in AmTrust's policy effectuating that contractual arrangement is limited in scope to cover only "liability . . . caused, in whole or in part, by 'your [Grasshof's] work' . . . for that additional insured[.]" Complaint ¶ 17. In another provision, the AmTrust policy affirms that it is,

---

[3] In *First Mercury*, the court followed *Maryland Casualty* to find that a policy naming one party as an additional insured was only responsible "for those liabilities traceable at least in part to the acts or omissions of the [named insured][.]" 241 F.Supp.3d at 1037.

ORDER
CASE NO. 20-cv-03248-RS

6

indeed, a primary policy covering "liability allegedly arising out of the operations of [Grasshof]." *Id.* Yet it specifically disclaims any obligation to cover liability unrelated to Grasshof's work: "[T]his insurance will not apply to any claim, loss, or liability which is determined to be solely the result of the additional insured's [Whitney's] negligence or solely the additional insured's [Whitney's] responsibility." *Id.*

In *Maryland Casualty*, the court concluded that a similar interplay of provisions left each insurer "primarily responsible" for the disputed defense costs. 81 Cal.App.4th at 1090. As in that case, the additional insured and primary insurance endorsements do not make the subcontractor broadly responsible for all defects related to the remodel of Wimmer's home. Rather, AmTrust is only responsible for liabilities traceable to the defects in Grasshof's work. Because some of the claims in the Wimmer matter are unrelated to Grasshof's work, AmTrust cannot be saddled with the entire defense obligation.

CBIC's attempt to undermine this conclusion by characterizing its policy as excess is unavailing. It seeks a departure from the modern trend, which "require[s] equitable contributions on a pro rata basis from all primary insurers regardless of the type of 'other insurance' clause in their policies." *Dart Industries, Inc. v. Commercial Union Ins. Co.*, 28 Cal.4th 1059, 1080 (2002).

For support, it relies on *Hartford Casualty Insurance Co. v. Travelers Indemnity Co.*, an exception to the modern trend. 110 Cal.App.4th 710 (2003). In that case, the court determined that the equities required enforcement of the excess clause rather than proration of the loss, interpreting the excess provision at issue to be a narrow exception to an otherwise primary policy rather than a broad "excess only" clause.[4] Specifically, the provision provided that "[t]his insurance is excess over any of the other [i]nsurance; whether primary, excess, contingent or on any other basis . . . [t]hat is valid and collectible [i]nsurance available to you . . . if you are added as an additional insured under any other policy." *Id.* at 715. The *Hartford* court specifically concluded that the

---

[4] It should be noted that the *Hartford* court endorsed the majority rule generally, but "reach[ed] a different result based on the facts and equities of this case." 110 Cal.App.4th at 725.

subcontractor's policy was "primary except in the specific instance that does apply in this case – when the insured is named as an additional insured under another policy, which makes the [additional insured's] policy excess by definition." *Id.* at 727.

It is tempting to apply the last sentence to this case: CBIC's excess clause provides that coverage is excess over any primary, excess, contingent insurance "or on any other basis that is available to you as an additional insured or contractual indemnitee[.]" Complaint ¶ 14. The excess endorsement in *Hartford* is nearly identical. Furthermore, the *Hartford* court emphasized it was enforcing the excess clause in part because the insured would not be prejudiced. Here, Whitney will not be injured – AmTrust will provide a complete defense even if CBIC's policy is only excess.

Nonetheless, *Hartford* is distinguishable. Before even turning to the question of whether to honor the excess clause, the court thoroughly analyzed the additional insured provision, which provided coverage to an additional insured "but only with respect to" the named insured's work, operations, facilities, or failure to provide warnings. 110 Cal.App.4th at 716-20. It compared and contrasted the causal and relational implications of the phrases "but only with respect to" and "arising out of" to conclude that the entity at issue was, indeed, an additional insured. Though CBIC argues this discussion of the contours of the additional insured clause is irrelevant here because there is no dispute that Whitney is an additional insured, such a reading ignores the import of how specifically AmTrust's additional insured endorsement is written. It specifies that its policy "*will not apply* to any claim, loss, or liability which is determined to be solely the result of [Whitney's] negligence or solely [Whitney's] responsibility." Complaint ¶ 17 (emphasis added). To induce primary coverage, then, Whitney's liability must be "caused, in whole or in part" by Grasshof. *Id.* Thus, Whitney is not even an additional insured with regard to the Wimmer claims alleging defects in Whitney's independent work, let alone entitled to demand primary coverage from AmTrust.

Furthermore, the reasoning in *Maryland Casualty* goes to the question of whether CBIC's policy is truly excess. It would be unreasonable to conclude that, by acquiring additional insurance

ORDER
CASE NO. 20-cv-03248-RS
8

subcontractor's policy was "primary except in the specific instance that does apply in this case – when the insured is named as an additional insured under another policy, which makes the [additional insured's] policy excess by definition." *Id.* at 727.

It is tempting to apply the last sentence to this case: CBIC's excess clause provides that coverage is excess over any primary, excess, contingent insurance "or on any other basis that is available to you as an additional insured or contractual indemnitee[.]" Complaint ¶ 14. The excess endorsement in *Hartford* is nearly identical. Furthermore, the *Hartford* court emphasized it was enforcing the excess clause in part because the insured would not be prejudiced. Here, Whitney will not be injured – AmTrust will provide a complete defense even if CBIC's policy is only excess.

Nonetheless, *Hartford* is distinguishable. Before even turning to the question of whether to honor the excess clause, the court thoroughly analyzed the additional insured provision, which provided coverage to an additional insured "but only with respect to" the named insured's work, operations, facilities, or failure to provide warnings. 110 Cal.App.4th at 716-20. It compared and contrasted the causal and relational implications of the phrases "but only with respect to" and "arising out of" to conclude that the entity at issue was, indeed, an additional insured. Though CBIC argues this discussion of the contours of the additional insured clause is irrelevant here because there is no dispute that Whitney is an additional insured, such a reading ignores the import of how specifically AmTrust's additional insured endorsement is written. It specifies that its policy "*will not apply* to any claim, loss, or liability which is determined to be solely the result of [Whitney's] negligence or solely [Whitney's] responsibility." Complaint ¶ 17 (emphasis added). To induce primary coverage, then, Whitney's liability must be "caused, in whole or in part" by Grasshof. *Id.* Thus, Whitney is not even an additional insured with regard to the Wimmer claims alleging defects in Whitney's independent work, let alone entitled to demand primary coverage from AmTrust.

Furthermore, the reasoning in *Maryland Casualty* goes to the question of whether CBIC's policy is truly excess. It would be unreasonable to conclude that, by acquiring additional insurance

ORDER
CASE NO. 20-cv-03248-RS
8

subcontractor's policy was "primary except in the specific instance that does apply in this case – when the insured is named as an additional insured under another policy, which makes the [additional insured's] policy excess by definition." *Id.* at 727.

It is tempting to apply the last sentence to this case: CBIC's excess clause provides that coverage is excess over any primary, excess, contingent insurance "or on any other basis that is available to you as an additional insured or contractual indemnitee[.]" Complaint ¶ 14. The excess endorsement in *Hartford* is nearly identical. Furthermore, the *Hartford* court emphasized it was enforcing the excess clause in part because the insured would not be prejudiced. Here, Whitney will not be injured – AmTrust will provide a complete defense even if CBIC's policy is only excess.

Nonetheless, *Hartford* is distinguishable. Before even turning to the question of whether to honor the excess clause, the court thoroughly analyzed the additional insured provision, which provided coverage to an additional insured "but only with respect to" the named insured's work, operations, facilities, or failure to provide warnings. 110 Cal.App.4th at 716-20. It compared and contrasted the causal and relational implications of the phrases "but only with respect to" and "arising out of" to conclude that the entity at issue was, indeed, an additional insured. Though CBIC argues this discussion of the contours of the additional insured clause is irrelevant here because there is no dispute that Whitney is an additional insured, such a reading ignores the import of how specifically AmTrust's additional insured endorsement is written. It specifies that its policy "*will not apply* to any claim, loss, or liability which is determined to be solely the result of [Whitney's] negligence or solely [Whitney's] responsibility." Complaint ¶ 17 (emphasis added). To induce primary coverage, then, Whitney's liability must be "caused, in whole or in part" by Grasshof. *Id.* Thus, Whitney is not even an additional insured with regard to the Wimmer claims alleging defects in Whitney's independent work, let alone entitled to demand primary coverage from AmTrust.

Furthermore, the reasoning in *Maryland Casualty* goes to the question of whether CBIC's policy is truly excess. It would be unreasonable to conclude that, by acquiring additional insurance

by way of its contractors, a general contractor's commercial insurance policy would never be triggered. Indeed, the *Maryland Casualty* court considered and rejected a similar excess argument, finding that forcing a subcontractor to shoulder the entire defense burden "would alter the purpose and nature of the additional insured endorsement by creating coverage for all of [the general contractor's] direct acts and for the other subcontractors' acts." 81 Cal.App.4th at 1090. For both interpretive and policy reasons, therefore, CBIC's policy cannot be considered excess.

Lastly, CBIC argues AmTrust is required to provide a full and complete defense because it has acknowledged a duty to defend. *See Presley Homes, Inc. v. Am. States Ins. Co.*, 90 Cal.App.4th 571, 575 (2001) ("It is settled that where an insurer has a duty to defend, the obligation generally applies to the entire action, even though the suit involves both covered and uncovered claims, or a single claim only partially covered by the policy."). By CBIC's own admission, however, it has also undertaken to defend the Wimmer matter – it seeks reimbursement "for defense fees incurred by CBIC prior to AMTRUST's agreement to defend." Complaint ¶ 23. Furthermore, in consequence of this Court's determination that its policy is not purely excess, CBIC *also* has a duty to defend the Wimmer matter. Because each policy is primary as to some portion of the claims, and both policies contemplate contribution by equal shares where all other insurance so permits, each insurer is required to fund half of the defense of the Wimmer matter.

## V. CONCLUSION

CBIC cannot shift onto a subcontractor the burden to provide a complete defense for a suit including claims against only a general contractor. Thus, for the reasons set forth above, AmTrust's motion for summary judgment is granted and CBIC's is denied. Each insurer must provide half of the defense costs in the underlying Wimmer matter and the civil case will be terminated. The parties are, of course, entitled to file a new case should one or both seek reallocation of defense costs after a determination of liability in the underlying matter.

**IT IS SO ORDERED**.

| | |
|---|---|
| Dated: June 9, 2021 | _____<br>RICHARD SEEBORG<br>Chief United States District Judge |